FILED
2019 Jul-18  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **YOLANDA GARRETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NIBCO, INC. AND JOHN DOES 1-5,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

**CLASS ACTION COMPLAINT**

COMES NOW Plaintiff Yolanda Garrett, by and through the undersigned counsel, and file this class action complaint against Defendant NIBCO ("NIBCO"), alleging and averring as follows:

**INTRODUCTION**

1.    This is a class action Complaint on behalf of Representative Plaintiff Yolanda Garrett and a class of people similarly situated who are owners of property, residents, and holders of property interests, constructed by D.R. Horton.  Said properties have been adversely affected by the use of NIBCO's PEX Products in the construction of their homes.  As a result of NIBCO's negligent, willful and wanton conduct, Representative Plaintiff and the proposed Class Members have suffered property damages, incidental damages, and mental anguish and seek monetary damages and/or injunctive or declaratory relief to repair or replace the PEX Products.

2.    NIBCO is a recognized leading provider of valves, fittings and flow control products for commercial, industrial and institutional construction as well as residential and irrigation markets. NIBCO entered the PEX plumbing market in 2005 after acquiring a manufacturer in Lebanon, Ohio.

1

3.    NIBCO designed and manufactures, warrants, markets and sells a line of cross-linked polyethylene ("PEX") plumbing tubes ("PEX Tubing"), bronze, brass and polyphenylsufone fittings which connect the PEX Tubing ("PEX Fittings"), stainless steel, copper and polybutylene crimps and clams which join the PEX Tubing and PEX Fittings ("PEX Clamps") (collectively, "PEX Products") for use throughout Alabama and the United States.

4.    NIBCO warrants that its PEX Tubing will be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether the entire plumbing system was composed of solely of NIBCO products, or instead, NIBCO components in conjunction with other manufacturers' PEX Products. The industry and consumers appropriately rely on the marketing nomenclature to mean a product with a 10-year or 25-year warranty is expected to have a usable lifetime of at least 10 years or 25 years, respectively.

5.    NIBCO touts the durability of its PEX Products, representing that the PEX Products are "chlorine-resistant, corrosion-resistant, freeze damage and abrasion resistant," and that "[t]he excellent thermal properties of PEX are ideal for hot and cold-water distribution."  Specifically concerning NIBCO's PEX Products, NIBCO represents to the industry and consumers that NIBCO's "promise of quality is backed by the NIBCO warranty, customer service expertise, specification and selection assistance."  In addition, NIBCO touts the process by which it manufactures its PEX piping: "…NIBCO employs a sterile, electron beam process that provides superior properties.  This process, which is PEX-c, delivers the highest qualify PEX tubing available today, while reducing the use of chemicals."

6.    However, NIBCO's PEX Products prematurely fail on a routine basis because of poor material selection, defective development and design, lack of adequate testing and/or defective manufacturing.  Specifically, the PEX Tubing is predisposed to premature oxidative failure and

creep rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking. Consequently, the PEX Products degrade, fail and leak, causing flooding and extensive property damage, often after only a few years of use.

7.     The defective NIBCO PEX Products have been, and continue to be, purchased and installed in residential and commercial buildings across the country. These PEX Products will inevitably fail, with the potential to cause a range of damages including flooding and property destruction.

8.     NIBCO knows and has known of the specific design, material and/or manufacturing defects alleged herein, that the PEX Products were not suitable for use within water-carrying plumbing systems and that there was a substantial risk that its PEX Products would degrade, fail and leak.

9.     NIBCO has failed to disclose these risks to consumers, including Representative Plaintiff and proposed class members.

10.     As a result of the defects in NIBCO's PEX Products, Representative Plaintiff and proposed class members have suffered and continue to suffer damages, including significant real and personal property damage caused by flooding from degraded and leaking PEX Products. As a result, Representative Plaintiff and proposed class members must replace and discard its PEX Products sooner than reasonably expected, often with little or no warning.

11.     The degradation and failure of the PEX Products has also caused damage to the value of Representative Plaintiff and proposed class members' properties in that the value of the properties has been stigmatized and diminished as compared to those which do not have the defective PEX Products.

12.     An earlier class action was filed, litigated, and settled to the exclusion of Representative Plaintiff and proposed class members because their homes were constructed by D.R. Horton.

3

13.    D.R. Horton is one of the largest home builders in the United States and has constructed several hundred, if not thousand, homes in the State of Alabama using NIBCO's PEX Products.

14.    Representative Plaintiff and proposed class seek to recover all damages proximately caused by NIBCO's PEX Products, including all costs associated with repairing, removing and/or replacing the PEX Products, as well as the costs of repairing any damage to its real and personal property caused by the failure of the PEX Products to perform as represented and warranted. Representative Plaintiff and proposed class members also seek injunctive relief requiring NIBCO to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

## **PARTIES**

15.    Representative Plaintiff Yolanda Garrett is a resident of Shelby County, Alabama, and resides at and own property located at 2032 Belvedere Cove, Birmingham, Alabama 35242.

16.    Defendant NIBCO, Inc. is a foreign corporation, whose headquarters and principal place of business is 1516 Middlebury Street, Elkhart, Indiana. NIBCO is authorized to transact business in the State of Alabama and may be served with a copy of the Summons and Complaint for Damages through its registered agent, CT Corporation, located at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104. At all times relevant to this action, Defendant NIBCO was engaged in manufacturing, warranting, marketing and selling its PEX Products for use throughout the State of Alabama and the United States.

17.    Defendant JOHN DOES 1-5 are unknown to Representative Plaintiff at this time, and therefore, Representative Plaintiff sues these Defendants by their fictitious names.  Defendants JOHN DOES 1-5 include those persons, firms, corporations or other entities who or which negligently or wantonly manufactured and/or installed and/or distributed the defective PEX

4

Products that were used into the construction of the Representative Plaintiff and proposed class'

properties.  Representative Plaintiff currently does not have information sufficient to identify

JOHN DOES 1-5 referenced in this paragraph but will substitute the correct identity of these

Defendants by amendment when ascertained.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332, as

amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5

million, exclusive of interest and costs, and it is a class action in which some members of the class

are citizens of states different than NIBCO.  *See* 28 U.S.C. § 1332(d)(2)(A).

19.     This Court has personal jurisdiction over NIBCO because it conducts substantial business

in Alabama.  NIBCO has sufficient minimum contacts with the State of Alabama and intentionally

avails itself of the consumers and markets within the State of Alabama through the promotion and

sales of its products, including its PEX Products.

20.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial

part of the acts giving rise to Representative Plaintiff and proposed class members' claims occurred

in this district, and because NIBCO conducts substantial business in this judicial district.

## FACTUAL ALLEGATIONS

### A.      NIBCO's Defective PEX Products

21.     NIBCO sells various plumbing products including PEX Tubing, PEX Fittings, PEX

Clamps, and other plumbing accessories.

22.     NIBCO states on its website that it is a "recognized leading provider of valves, fittings and

flow control products for commercial, industrial and institutional construction as well as residential

and irrigation markets."

23.     PEX is an acronym for cross-linked polyethylene. Polyethylene (denoted by "PE") is the raw material and the letter "X" in the acronym "PEX" refers to the cross-linking "chemical bonding" of the polyethylene across its molecular chains.

24.     NIBCO touts its PEX tubing as possessing "superior characteristics" due to NIBCO's cross-linking process. Specifically, NIBCO states the following about its PEX manufacturing process:

> Cross-linking is the process that gives NIBCO DURA-PEX tubing its superior characteristics. The long, simple chains in a polyethylene molecule are altered to form a more stable, three-dimensional network. This process changes the material from a thermoplastic into a thermoset. A thermoset differs from a thermoplastic because a thermoset cannot be melted and then reformed. This change in molecular structure creates a polyethylene product with enhanced mechanical properties. Many manufacturers use a chemical additive to activate the crosslinking process, but NIBCO employs a sterile, electron beam process that provides superior properties. This process, which is called PEX-c, delivers the highest quality PEX tubing available today, while reducing the use of chemicals.

### B.     NIBCO's Defective PEX Tubing

25.     Despite NIBCO's assertions regarding the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and catastrophic PEX Tubing failures caused by slow growth cracking mechanisms indicative of oxidative failure and/or creep rupture. These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing.

26.     NIBCO's PEX Tubing comes with an express warranty (the "Warranty") that warrants against defects in the materials and workmanship of the Tubing. Specifically, NIBCO's Warranty states the following:

> NIBCO INC. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from

defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period of ten (10) years form the date of purchase.

27.     To the extent that NIBCO's Warranty purports to limit or eliminate certain contractual rights afforded to Representative Plaintiff and proposed class members (e.g., on the type of recoverable damages or the ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

### C.     Failure of NIBCO's Defective PEX Tubing

28.     Consumers who purchased and installed NIBCO's PEX Tubing have experienced splitting, cracking and leaking of these products in their residential and commercial plumbing systems, causing water leaks that have and will cause extensive damage to homes, businesses and personal property of the consumers, as a result of water leaks from the PEX Tubing.

29.     During the foreseeable and intended use, NIBCO PEX Tubing is exposed to elements in residential and commercial plumbing systems which cause the NIBCO PEX Tubing to split, crack and prematurely fail as a result of oxidative failure and creep rupture.

30.     NIBCO knew or should have known that the PEX Tubing it manufactured, marketed, warranted and sold were susceptible to premature failure. The design, materials choices, and manufacturing practices of the PEX Tubing have created damaged products that begin to degrade on their first day of use, even if properly installed in their intended environment.

### D.    NIBCO's Defective PEX Fittings and Clamps

31.    In addition to its PEX Tubing, NIBCO also manufactures and sells the fittings, crimps, clamps, valves and installation accessories required to install a completed residential or commercial plumbing system.

32.    NIBCO manufactures and sells PEX Fittings that purportedly conform to ASTM standard F1807.

33.    ASTM International is a globally recognized organization that develops international voluntary consensus standards. The F1807 standard applies to metal insert fittings for use with SDR9 cross-linked polyethylene (PEX) tubing, which is manufactured and/or sold by NIBCO.

34.    F1807 insert fitting systems typically use a crimped stainless steel or copper ring to secure the PEX tubing to a brass alloy fitting. The fitting is inserted into the PEX tubing using a special tool that crimps a copper ring or stainless-steel clamp around the outside of the tubing, which, in turn, creates a seal between the PEX tubing and the brass fitting.

35.    Not only does NIBCO manufacture and sell ASTM F1807 fittings, but it encourages consumers to purchase and install the fittings with its PEX Tubing. NIBCO's Warranty covers 10 years if only its PEX Tubing is installed, but NIBCO increases its Warranty coverage to 25 years if its PEX Fittings, valves, and installation accessories (including PEX Clamps) are used in conjunction with its PEX Tubing.

36.    NIBCO's ASTM F1807 fittings are easily identified by a "NIBCO" stamp placed on the brass insert fittings.

37.    NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the PEX Fittings and accessories. Specifically, NIBCO's Warranty states, inter alia, the following:

NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX Fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.

38.     To the extent that NIBCO's Warranty purports to limit or eliminate certain contractual rights afforded to Representative Plaintiff and proposed class members (e.g., on the type of recoverable damages, or the ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

### E.     Failure of NIBCO's Defective PEX Fittings and PEX Clamps

39.     Consumers who purchased and installed NIBCO's PEX Fittings and PEX Clamps have experienced cracking and leaking of these products in their residential and commercial plumbing systems, causing water leaks that have and will cause extensive damage to homes, businesses and personal property of the consumers as a result of water leaks from the plumbing system.

40.     During the foreseeable and intended use, the NIBCO PEX Fittings are exposed to elements in residential and commercial plumbing systems which cause the NIBCO PEX Fittings to corrode and prematurely fail as the result of dezincification corrosion.

41.     After undergoing dezincification, the PEX Fittings prematurely fail and become brittle, sponge-like and/or plugged. As a result, a continuous network of tiny holes develops in the PEX Fittings, allowing water to weep through the walls of the fitting. Weakened fittings may crack or break, causing significant water damage. They may become plugged with corrosion product causing a low water pressure condition. Corroded fittings may also allow chloride-rich water to

weep through the wall of the fittings, wetting the adjacent PEX Clamp and causing the PEX Clamp to fail due to chloride-induced stress corrosion cracking.

42.     NIBCO knew or should have known that the PEX Fittings and PEX Clamps it manufactured, marketed, warranted and sold were susceptible to premature failure through dezincification corrosion and chloride-induced stress corrosion cracking, respectively.

43.     The design, materials choices, and manufacturing practices of the PEX Fittings and PEX Clamps have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment.

44.     The stainless steel PEX Clamps fail slowly over time due to "chloride-induced stress corrosion cracking," which is caused by defective design and/or defective manufacturing by Defendant. For stress corrosion cracking to occur, a susceptible material must be simultaneously exposed to tensile stress and chlorides.

45.     The failing PEX Clamps are manufactured from a stainless-steel alloy that is known to be susceptible to stress corrosion cracking in the presence of chlorides, and these clamps are used in a design where simultaneous exposure to static tensile stress and chlorides is (or should have been) reasonably anticipated. Stress corrosion cracking could not occur in the PEX Clamps if the clamps were manufactured from a material that is not susceptible to chloride induced stress corrosion cracking. Alternate materials that are generally immune to chloride induced stress corrosion cracking (exhibiting little or no susceptibility) and that are approved for plumbing applications in the United States were readily available at little or no additional cost at the time the failing clamps were manufactured by NIBCO.

46.     Additionally, the failing PEX Clamps are designed in a manner that allows tensile stresses to exceed the yield strength of the material during normal installation (meaning that the tensile

stresses are so high that the clamp permanently changes shape during installation, through a process known as "necking"). The clamps are designed in such a way that the tensile stresses created during normal and proper installation promote chloride-induced stress corrosion cracking, and the tensile stress condition is made even more detrimental by other aspects of the clamp design and/or manufacture (e.g., smearing of surface material, sharp edges, etc.). Stress corrosion cracking cannot occur in the absence of static tensile stress.  The PEX Clamp could not have failed in the manner that it did if commonly accepted principles of engineering design and manufacturing had been employed to sufficiently reduce tensile stresses.

47.    Chlorides are one of the most abundant compounds on the planet. They are routinely found in potable water, solder flux, masonry materials, concrete curing accelerants, perspiration, flame retardants, and numerous other materials routinely encountered in building construction. The presence of chlorides is (or should have been) reasonably anticipated and accounted for in the design and manufacture of the PEX Clamps.

48.    NIBCO acknowledges that liquid and paste fluxes for soldering applications of copper and copper-alloy fittings are corrosive and that they contain chlorides of zinc and ammonia. Additionally, NIBCO provides step-by-step brazing instructions to the installer.    These instructions specify the application of flux. The final step requires that the finished brazed assembly be wiped with a rag until all flux is removed.  NIBCO fails to warn the installer against allowing chloride-rich flux to come into contact with the stainless steel PEX Clamp.  Nevertheless, NIBCO knows or should have known that it is impossible to completely remove all traces of chloride-rich flux, and that by wiping the flux with a rag it is near certain that the chloride-rich flux will be smeared onto the adjacent stainless steel PEX Clamp.

49.     Additionally, NIBCO knows or should have known that chlorides from any source would be problematic for the stainless steel PEX Clamps. NIBCO fails to disclose these vulnerabilities.

50.     Due to the foregoing reasons, Representative Plaintiff seeks to recover all damages she suffered, which were proximately caused by NIBCO's PEX Products, including all costs associated with repairing, removing and/or replacing their PEX Products, as well as the costs of repairing any damage to its real and personal property caused by the failure of the PEX Products to perform as represented and warranted. Plaintiff also seeks injunctive relief requiring NIBCO to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

### F.     D.R. Horton Homes Specifically Excluded from Earlier Class Action

51.     An earlier class action was filed and litigated in the Middle District of Tennessee against NIBCO.  *See Cole, et al. v. NIBCO Inc., et al.* Case No.: 3:13-cv-07871-FLW-TJB; *Meadow, et al. v. NIBCO, Inc.*, Case No.: 3:15-cv-1124.

52.     This earlier action resulted in a class settlement to the specific exclusion of homes built by D.R. Horton:

> Excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by D.R. Horton, Inc.-Birmingham (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Dupree Plumbing Co. Inc.) and which are located in the following cities in Alabama: Bella Vista; Bessemer; Birmingham; Calera; Chelsea; Cottondale; Hoover; Kimberly; Leeds; Maylene; McCalla; Montgomery; Northport; Odenville; Pinson; Pratville; Springville; Trussville; and Tuscaloosa. Also excluded from the Settlement Class are Occupant Persons with respect to residential structures constructed by Continental Homes of Texas, L.P. (including, but not limited to, those for which the plumbing contracting was performed by or on behalf of Christianson Air Conditioning and Plumbing, LLC)

http://www.pexsystemsettlement.com/.

53.     As a result of this exclusion, Representative Plaintiff and proposed class members had no right to recovery against NIBCO for their damages and injuries but have many, if not all, of the same claims as the non-excluded persons.

54.     Representative Plaintiff received an "Offer to Replumb" her home from D.R. Horton, attached hereto as Exhibit B.

55.     Representative Plaintiff has not accepted the Offer as it does not adequately compensate her for all monetary damages and/or additional damages she has suffered resulting from the presence of defective PEX Products in her home.

56.     Upon information and belief, the proposed class members were excluded from the class settlement and have received the same or similar offers.

## CLASS ACTION ALLEGATIONS

57.     This action is brought on behalf of Representative Plaintiff, individually and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), on behalf of the class of consumers who have NIBCO products in their homes and other structures.

58.     The Representative Plaintiff and members of the proposed class are residents of Alabama whose property interests have been damaged resulting in economic damages and mental anguish.

59.     The class and subclasses proposed by the Representative plaintiff and those she represents are as follows:

> **all owners and possessors of property constructed by D.R. Horton in which**
>
> **PEX Products are present:**
>
> > **a.   who have not agreed to or received D.R. Horton's Offer to Replumb**
> >
> > **and have suffered mental anguish;**

      **b.**  **who have not agreed to or received D.R. Horton's Offer to Replumb and have suffered incidental damages as a result of the defective PEX Products and mental anguish; and**

      **c.**  **who have agreed to D.R. Horton's Offer to Replumb but have also suffered mental anguish and any other incidental damages which are not included in the Offer.**

60.    Excluded from the class are:

    a.    Defendants and any entities in which Defendants have a controlling interest;

    b.    Any of the legal representatives, heirs, successors, or assigns of Defendants;

    c.    The Judge to whom this case is assigned any member of the Judge's immediate family and any other judicial officer assigned to this case;

    d.    All persons or entities that properly execute and timely file a request for exclusion from the class; and

    e.    Any attorneys representing the Representative Plaintiff or members of the proposed class.

61.    Representative Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

62.    Numerosity: The members of the class are so numerous that separate joinder of each member is impractical, within the meaning of Rule 23(a)(1).  Although the exact number of class members will be better established after class notification, upon information and belief, the number of members in the class probably exceeds 100 people.  Proposed class members are readily identifiable through the exclusion information in the earlier class action settlement and may be

given any required notices by regular mail, supplemented, if necessary and required by the Court, by published notice.

63.     Common Questions of Law and Fact: There are numerous questions of law and fact common to the class, as required by Rule 23(a)(2), including:

a.     Whether NIBCO's PEX Products were defectively designed and/or manufactured for their intended purpose;

b.     Whether NIBCO's PEX Products were fit for their intended purposes;

c.     Whether NIBCO's PEX Products were merchantable;

d.     Whether NIBCO failed to warn consumers that its PEX Products were not properly tested during the design and development process;

e.     Whether NIBCO made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of its PEX Products in its product literature, including those relating to standards and reliability;

f.     Whether NIBCO omitted material information when it sold its PEX Products;

g.     Whether NIBCO exercised reasonable care in the design, manufacture, and testing of its PEX Products;

h.     Whether NIBCO owed a duty to the Representative Plaintiff and proposed class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of its PEX Products;

i.     Whether NIBCO breached its duty to Representative Plaintiff and the proposed class by designing, manufacturing, advertising, and selling to the Representative Plaintiff and class defective PEX Products;

j.      Whether NIBCO's PEX Products are progressively deteriorating at an accelerated rate;

k.      Whether NIBCO's PEX Products fail prematurely;

l.      Whether NIBCO knowingly sold or allowed its PEX Products to be distributed knowing the products failed at an increased rate;

m.      Whether NIBCO knew or should have known of the defective nature of its PEX Products; and

n.      Whether Representative Plaintiff and the class are entitled to relief under NIBCO's express warranties.

64.    The questions of law and fact common to members of the class predominate over any questions affecting only individual members, and thus a class action is superior to other available methods for fair and efficient adjudication of the controversy.

65.    Typicality: The claims of the Representative Plaintiff are typical of the claims to be advanced by members of the class, and her claims encompass those of the other class members she seeks to represent, as required by Fed. R. Civ. P. 23(a)(3).  The claims are typical because the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories, and the damages suffered by the Representative Plaintiff are the same kinds of damages suffered by members of the class.

66.    Adequacy of Representation: The Representative Plaintiff can fairly and adequately protect and represent the interests of each member of the class as required by Fed. R. Civ. P. 23(a)(4). The Representative Plaintiff will fairly and adequately protect and represent the interests of the members of the class based on the following facts and circumstances: their interests do not conflict; their interests are co-extensive with common rights of recovery based on the same essential facts

and legal theories; they are members of the same communities, they are similarly damaged and are seeking the same remedies; and they intend to prosecute the action vigorously.  Representative Plaintiff has retained counsel competent and experienced in complex class action litigation.

67.     The prosecution of separate actions by individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants and/or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

68.     NIBCO has acted on grounds generally applicable to all Members of the proposed Class, making final declaratory and injunctive relief concerning the Class as a whole appropriate within the meaning of Rule 23(b)(2);

69.     Common questions of fact and law between the Representative Plaintiff and Members of the class predominate over questions affecting only individual Class Members, within the meaning of Rule 23(b)(3).  Some common issues are set forth in Paragraph 63 above.

70.     Additionally, class action treatment is a superior method to other available methods for the fair and efficient adjudication of the controversy.  Certification under Rule 23(b)(3) would be proper in that, among other things: there is  no interest by members of the class in individually controlling the prosecution of separate actions, the expense of prosecuting individual claims for the matters for which class certification is sought would be prohibitive in light of the typical claimant's injuries, neither the Representative Plaintiff nor members of the proposed class have filed or are parties to any litigation in which the legal and factual issues raised herein are to be adjudicated, and it is desirable to concentrate the litigation of claims in a single proceeding so as

to avoid unnecessary and expensive duplication of actions and to provide for judicial economy. Whatever difficulties may exist in the management of a class action will be greatly outweighed by its benefits.

71.    Class action treatment is preferable to other available methods in providing a fair and efficient method for the adjudication of the controversy described herein, which has affected a large number of persons. The class action provides an effective method whereby the enforcement of the rights of the Representative Plaintiff can be fairly managed without unnecessary expense or duplication.

## CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE/WANTONNESS: FAILURE TO WARN

72.    The foregoing paragraphs and allegations are incorporated herein as if fully set forth.

73.    NIBCO had a duty to notify Representative Plaintiff and proposed class members of the defect in its products utilized in Representative Plaintiff and proposed class' homes. NIBCO had actual or constructive knowledge regarding the defects with the PEX Products.

74.    NIBCO breached its duty. After being notified of the defects with the PEX Products, NIBCO took no action to cure its breaches of duty to exercise ordinary care, thus requiring Representative Plaintiff and the proposed class members to take corrective action at their own expense to avoid continued failure of the PEX Products as well as further damage to their homes, business, and personal property.

75.    NIBCO's breach of duty was negligent or reckless and wanton.

76.    As a direct and proximate result of NIBCO's negligence or wantonness, Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

a.  The difference between the market value of the home had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

b.  Incidental damages for the cost of repairs to the home and structure of the home;

c.  Mental Anguish; and

d.  Costs to replace the PEX Products.

**COUNT TWO**
**NEGLIGENCE/WANTONNESS – DESIGN DEFECT**

77.   Representative Plaintiff realleges, as if fully set forth, each and every fact and allegation contained in the preceding paragraphs, and further alleges that:

78.   NIBCO had a duty to design each PEX product it manufactured, marketed, specified and/or sold to the above-named Plaintiff in a manner such that it was free of defects that prevent the PEX product from performing as advertised when put to its intended, reasonable and foreseeable use.

79.   NIBCO breached its duty to design PEX, or the products used in PEX, free from defects when put to its/their intended, reasonable and foreseeable uses.

80.   NIBCO's breach of its duty to design PEX, or the products used in PEX, free from defects when put to its/their intended, reasonable and foreseeable uses was negligent or reckless and wanton.

81.   As a direct and proximate result of NIBCO's negligence or wantonness, Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

a.  The difference between the market value of the home had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

19

    b.   Incidental damages for the cost of repairs to the home and structure of the home;

    c.   Mental Anguish; and

    d.   Costs to replace the PEX Products.

## COUNT THREE
## NEGLIGENCE/WANTONNESS

82.    Representative Plaintiff realleges, as if fully set forth, each and every fact and allegation contained in the preceding paragraphs, and further alleges that:

83.    Defendants, both named and fictitious, had a duty.

84.    Defendants, both named and fictitious, breached their duty.

85.    Defendants' breach of their duty was negligent or reckless and wanton.

86.    As a direct and proximate result of Defendants' breach, Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

    a.   The difference between the market value of the home and any other structure had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

    b.   Incidental damages for the cost of repairs to the home and structure of the home;

    c.   Mental Anguish; and

    d.   Costs to replace the PEX Products.

87.    New and distinct damages caused by Defendants' negligence or wantonness continue to occur to this date, and new damage will continue to occur for the foreseeable future.

## COUNT FOUR
## SUPPRESSION

88.    Representative Plaintiff realleges, as if fully set forth, each and every fact and allegation contained in the preceding paragraphs, and further alleges that:

20

89.    NIBCO had a duty to inform Representative Plaintiff and proposed class members of the defects. Specifically, NIBCO has known for years of the problems and defects outlined herein through various complaint forums (including, without limitation, its own warranty program) and as the result of claims being filed against NIBCO by insurance companies related to the defects. Notwithstanding its duty to inform Representative Plaintiff and proposed class members, NIBCO has never disclosed the defects to them. To the contrary, NIBCO consistently maintains that it is the "most reliable name in flow control," its PEX Products are "chlorine-resistant, corrosion resistant, freeze-damage and abrasion-resistant," and that "[t]he excellent thermal properties of PEX are ideal for hot and cold water distribution."

90.    NIBCO suppressed and concealed this information from Representative Plaintiff and proposed class members.

91.    NIBCO had a duty to disclose to Representative Plaintiff and proposed class members the material facts set forth above under the circumstances.

92.    NIBCO had superior knowledge of the facts and had a means of knowledge and expertise not shared by Representative Plaintiff and proposed class members and, therefore, NIBCO had a duty to disclose to Representative Plaintiff and proposed class members the material facts set forth above.

93.    NIBCO suppressed and concealed material facts from Representative Plaintiff and proposed class members in order to induce Representative Plaintiff and proposed class members and others to utilize its products.  Without knowledge of the foregoing material facts, Representative Plaintiff and proposed class members acted to its injury.

94.    As a direct and proximate result of NIBCO's breach,  Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

a.  The difference between the market value of the home and any other structure had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

b.  Incidental damages for the cost of repairs to the home and structure of the home;

c.  Mental Anguish; and

d.  Costs to replace the PEX Products.

### COUNT FIVE
### BREACH OF WARRANTIES

95.     Representative Plaintiff realleges, as if fully set forth, each and every fact and allegation contained in the preceding paragraphs, and further alleges that:

96.     By contract and operation of law, NIBCO expressly and impliedly warranted its PEX Products on Representative Plaintiff and proposed class members' homes and other structures.

97.     NIBCO breached the warranties to Representative Plaintiff and proposed class members by failing to design, manufacture, market and distribute a product fee of defects.

98.     As a direct and proximate result of NIBCO's breach, Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

a.  The difference between the market value of the home and any other structures had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

b.  Incidental damages for the cost of repairs to the home and structure of the home;

c.  Mental Anguish; and

d.  Costs to replace the PEX Products.

## COUNT SIX
## PRODUCTS LIABILITY/STRICT LIABILITY

99.    Representative Plaintiff realleges, as if fully set forth, each and every fact and allegation contained in the preceding paragraphs, and further alleges that:

100.    NIBCO was the manufacturer of the PEX Products which were furnished, delivered and installed in the Representative Plaintiff's home and other structures.

101.    The PEX Products were defective as they developed pinhole leaks as a result of insufficient antioxidant treatment of the piping, and experienced dezincification and failure of the fittings and clamps.  When NIBCO was made aware of these problems, it did not seek to correct them, but advised owners that the problems were a result of improper installation.

102.    The defects have caused physical harm to Representative Plaintiff and proposed class members' homes and other structures.

103.    There was no substantial change to the PEX Products from the time they left the possession of Defendant until they reached Representative Plaintiff and proposed class' homes.

104.    As a direct and proximate result of NIBCO's actions and facts above, Representative Plaintiff and proposed class members have suffered damages, including, but not limited to the following:

      a.    The difference between the market value of the home and any other structures had it been constructed correctly and the present market value of the home as it exists in its damaged condition;

      b.    Incidental damages for the cost of repairs to the home and structure of the home;

      c.    Mental Anguish; and

      d.    Costs to replace the PEX Products.

**WHEREFORE**, Representative Plaintiff respectfully requests, on behalf of herself and members of the class, that this Court:

    a.   Determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue an order certifying the class as defined above and designating Representative Plaintiff's counsel as counsel for the class;

    b.   Award all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages to which Representative Plaintiff and class members are entitled;

    c.   Award pre-judgment and post-judgment interest on such monetary relief;

    d.   Grant appropriate injunctive and/or declaratory relief as the Court may deem reasonable;

    e.   Award reasonable attorneys' fees and costs; and grant such further and other relief that this Court deems appropriate.  This relief may include, without limitation, any remediation, inspection, notice, and/or other necessary steps to be undertaken with respect to proposed class members with PEX Products on which the defect has not yet manifested.

Respectfully submitted, this the _____ day of July, 2019.

**PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY**

*/s/ Kirby D. Farris*
Kirby D. Farris (asb-2224-r78k)
Ken E. Riley (asb-9731-l71k)
J.D. Lawrence (asb-3434-o63l)
Calle Mendenhall (asb-7985-w37e)
**FARRIS, RILEY & PITT, LLP**
505 20th Street North, Suite 1700
Birmingham, Alabama 35203
T: (205) 324-1212
kfarris@frplegal.com
kriley@frplegal.com
jdlawrence@frplegal.com
cmendenhall@frplegal.com

*/s/ H. Arthur Edge, III*
H. Arthur Edge, III (asb-8927-d64h)
David L. Horsley (asb-6090-i47h)
Attorneys for Plaintiffs
ARTHUR EDGE, III, P.C.
2320 Highland Avenue South
Suite 175
Birmingham, Alabama 35205
Telephone:  (205) 453-0322
Facsimile:  (205) 453-0326
art@edgelawyers.com
david@edgelawyers.com